1
2
3
4
5              **UNITED STATES DISTRICT COURT**
6                     **DISTRICT OF NEVADA**
7    MICHAEL LEON WILLIAMS,                    )
8              Petitioner,                     )
9         v.                                   )        3:13-cv-00334-RCJ-WGC
10   RENEE BAKER et al.,                       )        **ORDER**
11             Respondents.                    )
12   _____  )

13        This is a *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254

14   by a Nevada state prisoner.   This matter comes before the Court on the merits of the

15   remaining grounds of the petition.

16   **I.    PROCEDURAL HISTORY[1]**

17        On January 23, 2007, Petitioner filed a motion for a *Faretta*[2] hearing. (Exhibit 17).   On

18   July 26, 2007, the state trial court canvassed Petitioner and granted Petitioner's request to

19   represent himself. (Exhibit 18).   In January 2009, Petitioner represented himself in a four-day

20   jury trial with the assistance of standby counsel. (Exhibits 54, 55, 56, 57).

21        The jury found Petitioner guilty of attempted robbery (Count 1), battery with substantial

22   bodily harm (Count 2), and destroying evidence (Count 3). (Exhibit 20).   The trial court

23   sentenced Petitioner to 10 years to life for both attempted robbery and battery with substantial

24   bodily harm, to run consecutively, and to one year for destroying evidence, to run concurrently.

25   (*Id.*).   The trial court sentenced Petitioner under the Large Habitual Criminal Statute. (*Id.*).

26        Petitioner, through counsel, filed a timely notice of appeal to the Nevada Supreme

27   _____

28        [1]   The exhibits referenced in this order are found in the Court's record at ECF No. 19-1
     through 19-9 and ECF No. 36-1 and 36-2.

          [2]   *Faretta v. California*, 422 U.S. 806 (1975).

1   Court.  (Exhibit 29).  Petitioner sought to remove his court-appointed appellate counsel and

2   have alternate counsel appointed, but the Nevada Supreme Court denied the motion.  (Exhibit

3   35).  Petitioner, through counsel, filed a direct appeal brief on November 17, 2009, and raised

4   eight claims.  (Exhibit 36).  On May 28, 2010, the Nevada Supreme Court held that Petitioner's

5   arguments lacked merit and affirmed the judgment of the trial court.  (Exhibit 37).  On July 9,

6   2010, the Nevada Supreme Court issued a remittitur.  (Exhibit 38).  On September 7, 2010,

7   the Nevada Supreme Court denied as untimely Petitioner's *pro per* requests to supplement

8   his direct appeal and to file a motion for rehearing.  (Exhibit 39).

9       On June 20, 2011, Petitioner, *pro per*, filed a petition for writ of habeas corpus in state

10  district court and raised 17 claims.  (Exhibit 40).  On May 20, 2011, Petitioner also filed a

11  "second supplement" to his state petition.[3]  (Exhibit 41).  The state district court denied the

12  petition for writ of habeas corpus.  (Exhibit 43).

13      On December 8, 2011, Petitioner, *pro per*, filed a notice of appeal to the Nevada

14  Supreme Court for the denial of his state petition.  (Exhibit 44).  On May 1, 2012, Petitioner

15  filed an opening appellate brief with the Nevada Supreme Court and raised 18 issues

16  regarding the denial of his state petition.  (Exhibit 45).  On May 14, 2012, Petitioner filed a

17  supplemental brief to the Nevada Supreme Court.  (Exhibit 46).  On May 14, 2013, the Nevada

18  Supreme Court affirmed the judgment of the state district court and issued a remittitur on June

19  20, 2013.  (Exhibits 47, 48).

20      On June 14, 2011, Petitioner, *pro per*, filed a motion for correction of illegal sentence

21  in state district court.  (Exhibit 49).  On February 1, 2012, the state district court denied the

22  motion.  (Exhibit 50).  On February 12, 2013, the Nevada Supreme Court affirmed the state

23  district court's denial of the motion and issued a remittitur on March 27, 2013.  (Exhibits 51,

24  52).

25      On June 16, 2013, Petitioner dispatched his petition for writ of habeas corpus pursuant

26  _____

27      [3] Respondents note that there is no "first supplement" in the record and assert that it
is not immediately apparent from the record why Petitioner's "second supplement" was filed
28  a month before Petitioner's original state petition.  (ECF No. 18 at 4).  The "second
supplement" appears to relate to Petitioner's original state petition.  (*See* Exhibit 41).

to 28 U.S.C. § 2254 to this Court. (ECF No. 7). On December 16, 2013, Respondents filed a motion to dismiss. (ECF No. 18). On August 25, 2014, this Court granted Respondent's motion in part. (ECF No. 29). Specifically, the Court ruled as follows: (a) Ground 1 was dismissed based on Petitioner's voluntary waiver of the claim; (b) Grounds 2 through 17 were exhausted with respect to the ineffective assistance of appellate counsel claims but were unexhausted with respect to the due process claims; (c) Grounds 18 through 21 were exhausted with respect to the due process claims but were unexhausted with respect to the ineffective assistance of appellate counsel claims; (d) Ground 22 was fully unexhausted as to both the due process claim and ineffective assistance of appellate counsel claim; (e) Ground 23 was exhausted with respect to the due process claim but unexhausted with respect to the ineffective assistance of appellate counsel claim; and (f) Ground 24 was fully exhausted as a due process claim. (*Id.* at 14). Respondents have answered the remaining grounds of the petition (ECF No. 35) and Petitioner has replied (ECF No. 39).

## II.    FEDERAL HABEAS CORPUS STANDARD

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Section 2254(d) sets forth the legal standard for this Court's review of this petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002). This Court's ability to grant the writ is limited to cases "where there is no possibility

fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.*; *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (explaining that the AEDPA standard is "difficult to meet" and is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt").

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003).  The formidable standard set forth in § 2254(d) reflects the view that habeas corpus is "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer,* 538 U.S. at 75.  The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable.  *Id*.  In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state court's last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

In a federal habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

1   If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must

2   overcome the burden set in § 2254(d) and (e) on the record that was before the state court.

3   *Cullen*, 563 U.S. at 185 (2011). A "federal court may not second-guess a state court's

4   fact-finding process unless, after review of the state-court record, it determines that the state

5   court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999

6   (9th Cir. 2004). A "decision adjudicated on the merits in a state court and based on a factual

7   determination will not be overturned on factual grounds unless objectively unreasonable in

8   light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S.

9   322, 340 (2003).

10  **III.     REMAINING GROUNDS IN THE PETITION**

11      The Court will address Petitioner's ineffective assistance of appellate claims first and

12  then his due process claims.

13      **A.     Ineffective Assistance of Appellate Counsel**

14      Ineffective assistance of counsel claims are governed by the two-part test announced

15  in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must show

16  that his counsel's performance was both unreasonably deficient and that the defense was

17  actually prejudiced as a result of counsel's errors. 466 U.S. at 687. This *Strickland* standard

18  also applies to claims of ineffective appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285

19  (2000). Appellate counsel has no constitutional duty to raise every non-frivolous issue

20  requested by the client. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). To state a claim of

21  ineffective assistance of appellate counsel, a petitioner must demonstrate: (1) that counsel's

22  performance was deficient in that it fell below an objective standard of reasonableness, and

23  (2) that the resulting prejudice was such that the omitted issue would have a reasonable

24  probability of success on appeal. *Smith*, 528 U.S. at 285. "Experienced advocates since time

25  beyond memory have emphasized the importance of winnowing out weaker arguments on

26  appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones*,

27  463 U.S. at 751-52. Petitioner must show that his counsel unreasonably failed to discover and

28  file nonfrivolous issues. *Delgado v. Lewis*, 223 F.3d 976, 980 (9th Cir. 2000). The relevant

1
2
3

inquiry under *Strickland* is not what appellate counsel could have pursued, but rather whether the choices made by appellate counsel were reasonable. *Williams v. Woodford*, 384 F.3d 567, 616 (9th Cir. 2004).

4
5
6
7

When 28 U.S.C. § 2254(d) applies, the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable" and "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 101, 105 (2011).

8

### i.   Ground 2

9
10
11
12

In Ground 2, Petitioner asserts that he was deprived of the right to effective assistance of appellate counsel based on the withdrawal of counsel and counsel's failure to include claims on appeal that Petitioner had requested be included in his opening direct appeal brief.  (ECF No. 7 at 5-6).

13
14
15
16
17
18
19
20
21
22
23
24
25
26

First, the Court addresses Petitioner's withdrawal of counsel claim.  In his federal petition, Petitioner asserts the following: On February 2, 2010, before the Nevada Supreme Court had issued its remittitur, the trial court withdrew Petitioner's court-appointed appellate counsel from Petitioner's case.  (ECF No. 7 at 4-5).  Petitioner had tried to file a motion to proceed *pro per* in the Nevada Supreme Court in order to file a supplemental appeal brief. (*Id.* at 6).  The Nevada Supreme Court had denied that motion because it had reasoned that Petitioner was represented by appellate counsel. (*Id.*). The outcome of Petitioner's direct appeal would have been different because (1) "issues not included in the direct appeal would have been exhausted" for purposes of 28 U.S.C. § 2254; (2) the Nevada Supreme Court would have reviewed "constitutional infirmities" and would have remanded; and (3) the Nevada Supreme Court would have reversed Petitioner's convictions "due to constitutional violations occurring . . . during pre-trial and trial." (*Id.*).  In his federal reply, Petitioner cites to *United States v. Cronic* and asserts that prejudice is presumed because he had gone unrepresented by counsel.  (ECF No. 39 at 6).

27

The Nevada Supreme Court considered and rejected this claim as follows:

28

> [A]ppellant claimed that appellate counsel was ineffective for withdrawing

1
2
3
4
5
6

prior to this court's decision on his appeal.  Specifically, appellant claimed that appellate counsel's withdrawal caused him to not be able to file a reply brief.  Appellant failed to demonstrate that appellate counsel was deficient or that he was prejudiced.  While the district court did grant appellant's motion to withdraw counsel during the pendency of appellant's direct appeal, this court denied appellant's motion to withdraw counsel.  A motion for withdrawal of counsel during the pendency of an appeal must be filed in the Supreme Court.  NRAP 46(c).  Therefore, the district court erred by granting that motion and it did not affect the appeal.  Further, appellant failed to demonstrate a reasonable probability of success on appeal had he been able to file a reply brief.  Therefore, the district court did not err in denying this claim.

7

(Exh. 47; ECF No. 19-5 at 109).

8
9
10
11
12
13
14
15

The state court record demonstrates the following: On November 17, 2009, court-appointed appellate counsel filed Petitioner's opening direct appeal brief.  (Exh. 36; ECF No. 19-4 at 23).  On November 30, 2009, Petitioner filed a motion to remove the court-appointed attorney from his case and to appoint alternate counsel in the Nevada Supreme Court.  (Exh. 34;  ECF No. 19-4 at 8).  On December 4, 2009, the Nevada Supreme Court denied the motion.  (Exh. 35; ECF No. 19-4 at 20).  On May 28, 2010, the Nevada Supreme Court affirmed Petitioner's conviction and sentence.  (Exh. 37; ECF No. 19-4 at 63).  On June 22, 2010, the Nevada Supreme Court issued a remittitur.  (Exh. 38; ECF No. 19-4 at 70).

16
17
18
19
20
21
22
23
24
25
26
27
28

The Court finds that Petitioner fails to demonstrate that the Nevada Supreme Court's decision was an unreasonable application of *Strickland*.  First, to the extent that Petitioner may have been without counsel for the reply brief, *Cronic* does not apply.  In *United States v. Cronic*, 466 U.S. 648 (1984), the United States Supreme Court held that prejudice is presumed "when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *Id.* at 659 n.25.  In *Smith v. Robbins*, 528 U.S. 259 (2000), the United States Supreme Court distinguished between the "denial of counsel altogether on appeal, which warrants a presumption of prejudice, from mere ineffective assistance of counsel on appeal, which does not." *Id.* at 286.  Here, Petitioner had counsel on appeal for his opening brief.  As the Ninth Circuit has held, "the failure of counsel to . . . file a reply brief is not so essential to the fundamental fairness of the appellate process as to warrant application of a per se rule of prejudice. *United States v. Birtle*, 792 F.2d 846, 848 (9th Cir. 1986) (holding that "[e]ven if a first appeal as of right is a critical stage within the

7

1  meaning of *Cronic*, it does not follow that every step of the appeal is similarly a critical stage").

2  As such, Petitioner has failed to established presumed prejudice in this case.

3        Second, Petitioner fails to establish that had he been able to file a reply brief, he would

4  have had a reasonable probability of success on appeal.  Petitioner does not identify any

5  specific issues or arguments that he would have raised in a reply brief and does not explain

6  how any of those issues or arguments would have changed the outcome of his direct appeal.

7  Instead, Petitioner appears to focus on post-conviction exhaustion issues which are

8  inapplicable to the outcome of Petitioner's direct appeal.  Accordingly, Petitioner fails to meet

9  his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved

10  an unreasonable application of, *Strickland*, or that the decision was based on an unreasonable

11  determination of the facts in light of the evidence presented in the state court proceeding.

12        With respect to claims raised on appeal, Petitioner asserts the following: Petitioner's

13  court-appointed counsel failed to address meritorious issues in the direct appeal brief.  (ECF

14  No. 7 at 5).  Petitioner had alerted counsel about the constitutional issues that he wanted

15  addressed in his opening direct appeal brief.  (*Id.* at 5-6).  The outcome of Petitioner's direct

16  appeal would have been different had counsel included those issues because (1) "issues not

17  included in the direct appeal would have been exhausted" for purposes of 28 U.S.C. § 2254;

18  (2) the Nevada Supreme Court would have reviewed "constitutional infirmities" and would have

19  remanded; and (3) the Nevada Supreme Court would have reversed Petitioner's convictions

20  "due to constitutional violations occurring . . . during pre-trial and trial."  (*Id.* at 6).

21       The Nevada Supreme Court considered and rejected this claim as follows:

22       [A]ppellant claimed that appellate counsel was ineffective for failing to communicate with appellant regarding what claims to raise on appeal.  Appellant

23  failed to demonstrate that appellate counsel was deficient or that he was prejudiced.  Appellant's own letters provided in support of his petition

24  demonstrate that counsel and appellant communicated several times during the appeal and we note that counsel incorporated several of appellant's arguments

25  listed in the letters.  As stated above, appellate counsel is not required to raise every non-frivolous argument on appeal.  Therefore, the district court did not err

26  in denying this claim.

27  (Exh. 47; ECF No. 19-5 at 108-09).

28       The Court finds that Petitioner fails to establish that he was prejudiced by the omission

1
2
3
4
5
6
7

of certain issues on appeal.  Plaintiff has not identified what issues he wanted counsel to include in the opening brief nor has he explained how the inclusion of these issues would have had a reasonable probability of success on appeal.  As such, Petitioner fails to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, *Strickland*, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The Court denies federal habeas relief as to Ground 2 in its entirety.

8

### ii.    Ground 3

9
10
11
12
13
14
15
16

In Ground 3, Petitioner argues that appellate counsel was ineffective because he failed to challenge the consolidation of Petitioner's charges for attempt robbery and battery with substantial bodily harm with the charges for destroying evidence.  (ECF No. 7 at 8).  Petitioner asserts that it was an abuse of discretion for appellate counsel to omit this on direct appeal. (*Id.*).  Petitioner argues that it would have been more "prejudicial than probative to consolidate the two cases."  (*Id.* at 9).  Petitioner argues that the destroying evidence charge was separate and distinct from the attempt robbery and battery with substantial bodily harm and that there was no relevancy in using the shirt for the attempt robbery charge.  (*Id.*).

17
18
19
20

The state court record reflects the following: In case number C226809, Petitioner was charged with attempt robbery and battery with substantial bodily harm.  (Exh. 6; ECF No. 19-1 at 59-60).  In case number C229397, Petitioner was indicted with destroying evidence.  (Exh. 7; ECF No. 19-1 at 64-65).

21
22
23
24
25
26

The preliminary hearing transcript demonstrates the following: On July 1, 2006, Lanny Shearon left Buck's Tavern bar in Clark County, Nevada, and went to his car.  (Exh. 2 at 4-5[4]; ECF No. 19-1 at 29).  Shearon was too intoxicated to drive so he sat in his car and slept. (Exh. 2 at 5, 14).  Shearon stuck his head outside of his window to vomit and was hit in the back of the head.  (*Id.*).  When Shearon looked up, he saw Petitioner who demanded that Shearon turn over his wallet.  (*Id.* at 5-6).  Shearon told Petitioner that he was not going to

27
28

---

[4] This citation reflects the transcript page numbers.

1
2
3
4
5
6
7
8
9
10
11

give the wallet to him.  (*Id.* at 6).  Petitioner then hit Shearon in the right eye.  (*Id.*).  Petitioner struck Shearon in the head four times.  (*Id.* at 7).  Petitioner demanded that Shearon turn over his wallet again and Shearon told him no.  (*Id.*).  Shearon eventually leaned back into his car out of Petitioner's reach and noticed that he was bleeding.  (*Id.* at 7, 10).  Petitioner said, "I would have just gave up my wallet" and then took off running.  (*Id.* at 7).  Petitioner jumped over the hood of the car and ran down an alley.  (*Id.* at 10).  Shearon went back into the bar where someone called an ambulance.  (*Id.*).   While Shearon was being treated by paramedics, police officers asked Shearon if he could identify the guy.  (*Id.* at 10-11).  Shearon said he could.  (*Id.*).   The ambulance took Shearon to another location where Shearon saw Petitioner wearing the same clothes that he had assaulted Shearon in.  (*Id.* at 11).

12
13
14

The indictment stated that, on July 1, 2006, Petitioner attempted to destroy evidence by ripping his shirt to conceal and/or destroy blood evidence in front of an officer.  (Exh. 7; ECF No. 19-1 at 64-65).

15
16
17
18
19
20
21
22
23
24

In the motion to consolidate, the prosecutor argued the following: In the booking area of the Clark County Detention Center, an officer observed another inmate ripping Petitioner's shirt as a way to get rid of the blood evidence.  (Exh. 11; ECF No. 19-2 at 4).  Officers then took Petitioner into a room, took all of his clothes, and booked the clothes into evidence.  (ECF No. 19-2 at 4).  Later, DNA testing confirmed that the blood on Petitioner's shirt belonged to Shearon.  (*Id.*). The prosecutor argued that the cases should be consolidated because the offenses could have been joined in a single indictment or information, Petitioner could not demonstrate improper prejudice, and the same evidence would be offered at each trial.  (*Id.* at 3-5).  The trial court granted the motion and consolidated the two cases.  (Exh. 12; ECF No. 19-2 at 9).

25

The Nevada Supreme Court considered and rejected this claim as follows:

26
27
28

> [A]ppellant claimed that appellate counsel was ineffective for failing to argue that the charge of destroying evidence should not have been joined with the charges of attempted robbery and battery causing substantial bodily injury. Appellant failed to demonstrate that appellate counsel was deficient or that he was prejudiced because he failed to demonstrate that this claim had a

1
2
3

reasonable probability of success on appeal.  Evidence from the destroying-evidence case was cross-admissible in the attempted robbery and battery-causing-substantial-bodily-injury case, and vice versa, and the crimes were connected together. *Mitchell v. State*, 105 Nev. 735, 738, 782 P.2d 1340, 1342 (1989); NRS 173.115(1)-(2).  Therefore the district court did not err in denying this claim.

4

(Exh. 47; ECF No. 19-5 at 102).

5
6
7
8
9
10
11
12
13
14
15
16

The Court finds that Petitioner fails to demonstrate that the Nevada Supreme Court's decision was an unreasonable application of *Strickland*.  The Nevada Supreme Court correctly noted that criminal counts may be tried together if evidence of one charge would be cross-admissible in evidence at a separate trial on another charge.  In this case, the attempt robbery and battery with substantial bodily harm charges were related to the charge of destroying evidence in connection to the attempt robbery charge and could properly be tried together. Petitioner cannot establish that he would have had a reasonable probability of success on this issue had counsel raised it on appeal.  As such, Petitioner fails to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, *Strickland*, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court denies federal habeas relief as to Ground 3 in its entirety.

17

### iii.    Ground 4

18
19
20
21
22
23
24
25
26
27

In Ground 4, Petitioner argues that appellate counsel was ineffective for failing to raise an issue that occurred during arraignment.  (ECF No. 7 at 12).  Petitioner argues that the district court judge arraigned Petitioner on the charges of destroying evidence while Petitioner was "without the assistance of counsel."  (*Id.*).  The district court appointed counsel after Petitioner was arraigned.  (*Id.*).   The district court entered a "not guilty" plea on behalf of Petitioner while he was without counsel on the destroying evidence charge even though Petitioner objected.  (*Id.*).  The outcome would have been different had appellate counsel raised this because the "issue may have compelled the Nevada Supreme Court to remand this case back to the District Court to conduct limited new hearings or an entirely new trial, or to take some other further action."  (*Id.* at 13).

28

1

The Nevada Supreme Court considered and rejected this claim as follows:

2

3

4

5

6

7

8

9

[A]ppellant claimed that appellate counsel was ineffective for failing to argue that appellant's conviction was void because he was without counsel during his arraignment on the charge of destroying evidence and the district court did not read the indictment to him. Appellant failed to demonstrate that appellate counsel was deficient or that he was prejudiced because he failed to demonstrate that this claim had a reasonable probability of success on appeal. While it appears correct that appellant was not formally represented by counsel at the arraignment on the charge of destroying evidence, the public defender's office was there during the hearing and was informally representing him at the time because it was also representing him on the charges of attempted robbery and battery causing substantial bodily injury. [FN2]  Further, while the district court did not read the indictment to appellant, it was clear that he had a copy of the indictment and understood it as he attempted to make a challenge to the indictment at the arraignment.  Therefore the district court did not err in denying this claim.

10

11

[FN2] We note that the public defender's office made arguments on behalf of appellant at the hearing regarding the joinder of the two cases. At the end of the hearing, the district court appointed the public defender's office to represent appellant on destroying-evidence case.

12

(Exh. 47; ECF No. 19-5 at 102-03).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The Court finds that Petitioner fails to demonstrate that the Nevada Supreme Court's decision was an unreasonable application of *Strickland*.  Under the Sixth Amendment, the right to counsel applies to all "critical stages" of the prosecution which may include arraignments. *United States v. Leonti*, 326 F.3d 1111, 1116-17 (9th Cir. 2003).  The essence of a critical stage is that the adversary nature of the proceeding combined with the possibility that a defendant will be prejudiced in some significant way by the absence of counsel. *Id.* at 1117. In this case, although Petitioner did not have a formal appointment of counsel for his arraignment on his destroying evidence charge, he did informally have the public defender appointed to his attempt robbery charge in the courtroom during the arraignment.  Additionally, that public defender argued on the motion to consolidate Petitioner's two criminal cases and then was officially appointed Petitioner's attorney at the end of that same hearing.  Petitioner cannot demonstrate that he lacked complete representation during his arraignment for the destroying evidence charge and there is no Nevada or federal law requiring representation at his arraignment above and beyond what he was provided.  As such, he cannot demonstrate that he would have had a reasonable probability of success on appeal.  Petitioner fails to meet

28

1   his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved

2   an unreasonable application of, *Strickland*, or that the decision was based on an unreasonable

3   determination of the facts in light of the evidence presented in the state court proceeding. The

4   Court denies federal habeas relief as to Ground 4 in its entirety.

5                    iv.    **Ground 5**

6          In Ground 5, Petitioner argues that appellate counsel was ineffective because he did

7   not raise the issue of the prosecutor changing the wording of the destroying evidence charge

8   without resubmitting it to a grand jury. (ECF No. 7 at 15). Petitioner asserts that the district

9   court erroneously permitted the prosecutor to change the wording of the destroying evidence

10  charge to include additional theories of the charge. (*Id.* at 15-16). Petitioner asserts that

11  allowing the prosecutor to reword the charge to include "aided and abetted" to "destroying

12  evidence by ripping his shirt to conceal and/or destroy blood evidence" prejudiced him

13  because it gave the prosecution greater latitude in the case. (*Id.* at 16).

14         The state court record demonstrates the following: On February 15, 2007, the state filed

15  an amended information which charged Petitioner with burglary, attempt robbery, battery with

16  substantial bodily harm, destroying evidence, and intimidating a public officer. (Exh. 13; ECF

17  No. 19-2 at 12-13). On July 13, 2007, the state filed a motion to amend information. (Exh. 14;

18  ECF No. 19-2 at 17). The state sought to amend the battery with substantial bodily harm

19  count to allege that Petitioner had also hit the victim in the head and the destroying evidence

20  count to allege that Petitioner had tried to cover up the crime of attempt robbery and battery

21  with substantial bodily harm. (ECF No. 19-2 at 18). The state also sought to delete the counts

22  for burglary and intimidating a police officer. (*Id.*).

23         On October 11, 2007, the state filed a second amended information for attempt

24  robbery, battery with substantial bodily harm, and destroying evidence. (Exh. 15, ECF No. 19-

25  2 at 23). Under destroying evidence, the information stated, in part, that:

26             Defendant being liable under the following theories of criminal liability:
           1) by defendant directly or indirectly committing the act, to wit: by ripping his shirt
27         to conceal and/or destroy blood evidence; and/or 2) by defendant engaging in
           a conspiracy with another unnamed individual to destroy evidence whereby each
28         and every co-conspirator is liable for the foreseeable acts of every other co-

                                            13

1

2

3

4

      conspirator done in furtherance of the conspiracy; and/or 3) by the defendant and another unnamed individual aiding or abetting each other whereby each aider and abettor is liable as a principal for the crimes by counseling, encouraging, hiring, commanding, inducing, procuring, or acting in concert with one another to commit the acts constituting the offense, as evidenced by the conduct of the Defendant and the unnamed individual before, during, and after the offense.

5

(Exh. 15; ECF No. 19-2 at 24-25).

6

7

8

9

10

      On January 20, 2009, Petitioner's four-day jury trial started.  (Exh. 54; ECF No. 19-6 at 3).  On January 22, 2009, the state filed a third amended information which eliminated the theory of conspiracy.  (Exh. 16; ECF No. 19-2 at 30-31).  On the third-day of trial, on January 22, 2009, the trial judge notified Petitioner that the state had filed a third amended information and had removed the theory of conspiracy.  (Exh. 56; ECF No. 19-8 at 6).

11

      The Nevada Supreme Court considered and rejected this claim as follows:

12

13

14

15

16

17

18

19

      [A]ppellant claimed that appellate counsel was ineffective for failing to argue that the district court erred by allowing the State to amend and re-word the information for the charge of destroying evidence before and during trial.  Further, he claimed that appellate counsel was ineffective for failing to argue that the amending of the information was prosecutorial misconduct and for failing to argue that a jury instruction regarding aiding and abetting should not have been given.  Appellant failed to demonstrate that appellate counsel was deficient or that he was prejudiced because he failed to demonstrate that these claims had a reasonable probability of success on appeal.  After appellant was indicted and prior to trial, the State added two theories of how appellant destroyed evidence: conspiracy and aiding and abetting.  During trial, the State amended the information to delete the theory of conspiracy.  Appellant failed to demonstrate that an additional or different offense was a charged or that his substantial rights were prejudiced by the State adding a theory of the offense.  NRS 173.095(a).  Therefore, the district court did not err in denying these claims.

20

(Exh. 47; ECF No. 19-5 at 103).

21

22

23

24

25

26

27

      The Court finds that Petitioner fails to demonstrate that the Nevada Supreme Court's decision was an unreasonable application of *Strickland*.  Pursuant to NRS § 173.095(1), "[t]he court may permit an indictment or information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."  In this case, Petitioner cannot establish that the state added a different offense because the aiding and abetting amendment constituted a theory of how Petitioner committed the preexisting charge of destroying evidence.  Additionally, Petitioner cannot

28

14

1  demonstrate that he was substantially prejudiced by this amendment when he knew about the

2  aiding and abetting theory for over a year before his trial.  *See DePasquale v. State*, 803 P.2d

3  218, 221 (Nev. 1990) (discussing cases that a defendant is not prejudiced where he was able

4  to properly prepare a defense).  Accordingly, Petitioner cannot demonstrate that had appellate

5  counsel raised this issue on direct appeal, he would have had a reasonable probability of

6  success.  Petitioner fails to meet his burden of proving that the Nevada Supreme Court's

7  decision was contrary to, or involved an unreasonable application of, *Strickland*, or that the

8  decision was based on an unreasonable determination of the facts in light of the evidence

9  presented in the state court proceeding. The Court denies federal habeas relief as to Ground

10  5 in its entirety.

11  **v.      Ground 6**

12  In Ground 6, Petitioner argues that appellate counsel was ineffective for failing to raise

13  the issue of prosecutorial misconduct because the prosecutor had added additional theories

14  to the charge of destroying evidence without resubmitting the count to the grand jury.  (ECF

15  No. 7 at 19).

16  The Court finds that Petitioner fails to demonstrate that the Nevada Supreme Court's

17  decision was an unreasonable application of *Strickland* for the same reasons discussed in

18  Ground 5.  As such, Petitioner fails to meet his burden of proving that the Nevada Supreme

19  Court's decision was contrary to, or involved an unreasonable application of, *Strickland*, or that

20  the decision was based on an unreasonable determination of the facts in light of the evidence

21  presented in the state court proceeding. The Court denies federal habeas relief as to Ground

22  6 in its entirety.

23  **vi.      Ground 7**

24  In Ground 7, Petitioner argues that appellate counsel was ineffective because he failed

25  to raise the issue that the district court abused its discretion for allowing the state to proceed

26  on the unconstitutionally vague count of battery with substantial bodily harm.  (ECF No. 7 at

27  22).  Petitioner asserts that substantial bodily harm was unconstitutionally vague based of the

28  way the count was worded in the information, the omission of the NRS § 0.060 definition

and/or elements, and the element of "prolonged pain" and "serious permanent disfigurement" were unconstitutionally vague. (*Id.* at 22-23). Petitioner asserts that the jury had submitted their note on those elements because they were unconstitutionally vague. (*Id.* at 23). Petitioner asserts that he did not receive notice as to what elements were to be used to support the count. (*Id.*).

The state court record demonstrates that Petitioner's amended, second amended, and third amended information all stated:

> BATTERY WITH SUBSTANTIAL BODILY HARM
> [Petitioner] did then and there wilfully, unlawfully, and feloniously use force or violence upon the person of another, to wit: LANNY SHEARON, by repeatedly punching the said LANNY SHEARON in the face, resulting in substantial bodily harm to the said LANNY SHEARON.

(Exh. 13, 15, 16; ECF No. 19-2 at 13, 24, 30). Jury Instruction #7 stated the following:

> If you find Defendant guilty of Battery, you must determine whether the battery resulted in "substantial bodily harm."
> "Substantial bodily harm" means:
> 1. Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protected loss or impairment of the function of any bodily member or organ; or
> 2. Prolonged physical pain.

(Exh. 53; ECF No. 19-5 at 140). During deliberations, the jurors sent a note to the court which asked, "Can we have definitions for 'serious' and for 'prolonged'? Instruction #7." (Reply Exh. 21; ECF No. 39 at 63).

The Nevada Supreme Court considered and rejected this claim as follows:

> [A]ppellant claimed that appellate counsel was ineffective for failing to argue that the charge of battery causing substantial bodily injury was unconstitutionally vague. Further, he claimed that appellate counsel was ineffective for failing to argue that the State should have included the definition of substantial bodily injury in the information and that it was error to include jury instructions regarding battery causing substantial bodily injury. Appellant failed to demonstrate that appellate counsel was deficient or that he was prejudiced because he failed to demonstrate that these claims had a reasonable probability of success on appeal. This court has previously concluded that the term "prolonged physical pain" was not unconstitutionally vague. *Collins v. State*, 125 Nev. 60, 65, 125 P.3d 90, 93 (2009). Moreover, appellant failed to make any cogent argument that the term "serious, permanent disfigurement" was unconstitutionally vague. *Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987). Further, the information sufficiently informed appellant of the elements of battery causing substantial bodily injury. *See* NRS 200.481(2)(b). NRS 0.060 merely defines substantial bodily injury. Finally, appellant failed to demonstrate that appellate counsel erred by failing to attack the jury instructions regarding

1

battery causing substantial bodily injury.  Therefore, the district court did not err in denying these claims.

2

(Exh. 47; ECF No. 19-5 at 103-04).

3

The Court finds that Petitioner fails to demonstrate that the Nevada Supreme Court's

4

decision was an unreasonable application of *Strickland*.  "Substantial bodily harm" is defined

5

by NRS § 0.060 exactly as stated in Jury Instruction #7.  *See* Nev. Rev. Stat. § 0.060.  "A

6

statute is deemed to be unconstitutionally vague if it '(1) fails to provide notice sufficient to

7

enable persons of ordinary intelligence to understand what conduct is prohibited and (2) lacks

8

specific standards, thereby encouraging, authorizing, or even failing to prevent arbitrary and

9

discriminatory enforcement.'"  *Collins v. State*, 203 P.3d 90, 91 (Nev. 2009).  The Nevada

10

Supreme Court explicitly held that the term "prolonged physical pain" as used to define

11

substantial bodily harm is not unconstitutionally vague.  *Id.*  Additionally, Petitioner has not

12

made any viable argument that the term "serious, permanent disfigurement" is

13

unconstitutionally vague under the two prongs.  Even though the jury had questions about the

14

definition of "serious, permanent disfigurement" and "prolonged physical pain," that alone is

15

insufficient to establish an unconstitutionally vague statute.  Thus, Petitioner cannot establish

16

that, had appellate counsel raised the issue of an unconstitutionally vague statute, he would

17

have had a reasonable probability of success on appeal.  As such, Petitioner fails to meet his

18

burden of proving that the Nevada Supreme Court's decision was contrary to, or involved an

19

unreasonable application of, *Strickland*, or that the decision was based on an unreasonable

20

determination of the facts in light of the evidence presented in the state court proceeding. The

21

Court denies federal habeas relief as to Ground 7 in its entirety.

22

**vii.    Ground 8**

23

In Ground 8, Petitioner asserts that appellate counsel was ineffective for failing to argue

24

that Petitioner had been arrested without probable cause because the victim had not identified

25

Petitioner prior to the arrest.  (ECF No. 7 at 26, 28).

26

The Nevada Supreme Court considered and rejected this claim as follows:

27

[A]ppellant claimed that appellate counsel was ineffective for failing to
argue that the district court erred by denying his motion to suppress.

28

17

1
2
3
4
5
6
7
8
9

Specifically, appellant claimed that he was arrested prior to the police officer having probable cause. Appellant failed to demonstrate that appellate counsel was deficient or that he was prejudiced because he failed to demonstrate that this claim had a reasonable probability of success on appeal. Appellant was detained after he was found less than a mile from the crime scene because he matched the description given by the victim and appeared to have blood on his shirt. He was stopped by one officer who feared that appellant might be dangerous and was handcuffed. A short time later, the victim was brought to the scene of the detainment and identified appellant as the assailant. At this time, appellant was arrested. Based on the above facts, the detention was not an arrest because the police officer had reasonable articulable suspicion that appellant had committed a crime, *Somee v. State*, 124 Nev. 434, 442, 187 P.3d 152, 158 (2008), a detention does not become a de facto arrest merely because a defendant is placed in handcuffs. *State v. McKellips*, 118 Nev. 465, 471, 49 P.3d 655, 660 (2002) (stating that a detention does not become a de facto arrest merely because a defendant is placed in a police car). Therefore, the district court did not err in denying this claim.

10   (Exh. 47; ECF No. 19-5 at 104-05).

11   The Court finds that Petitioner fails to demonstrate that the Nevada Supreme Court's

12   decision was an unreasonable application of *Strickland*. "The Fourth Amendment prohibits

13   'unreasonable searches and seizures' by the Government, and its protections extend to brief

14   investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v.*

15   *Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). A law

16   enforcement officer may engage in brief investigative stops when the officer has "a

17   particularized and objective basis for suspecting the particular person stopped of criminal

18   activity." *See Navarette v. California*, __ U.S.__, 134 S.Ct. 1683, 1687 (2014). Accordingly,

19   Petitioner's argument that he must have been arrested when law enforcement officers

20   detained him fails. The law permits law enforcement officers to engage in brief investigatory

21   stops of a person which may later turn into an arrest. Thus, Petitioner cannot demonstrate

22   that, had appellate counsel raised this issue on direct appeal, he would have had a reasonable

23   probability of success. Petitioner fails to meet his burden of proving that the Nevada Supreme

24   Court's decision was contrary to, or involved an unreasonable application of, *Strickland*, or that

25   the decision was based on an unreasonable determination of the facts in light of the evidence

26   presented in the state court proceeding. The Court denies federal habeas relief as to Ground

27   8 in its entirety.

28   ///

1

2       viii.    **Ground 9**

        In Ground 9, Petitioner asserts that appellate counsel was ineffective for failing to
3
appeal the trial judge's denial of Petitioner's second motion for discovery.  (ECF No. 7 at 30).
4
Petitioner asserts that the victim's medical records demonstrated that the victim had suffered
5
from a social disorder and had taken Xanax.   (*Id.* at 31).  Petitioner asserts that he should
6
have been able to obtain discovery on the extent of the victim's social disorder.   (*Id.*).
7
Petitioner argues that, had he been permitted to obtain the victim's medical records in relation
8
to social anxieties, he would have been able to impeach the victim's credibility and support
9
Petitioner's theory that Petitioner was not the aggressor.   (*Id.* at 32).  Petitioner asserts that
10
he had sought the medical records to demonstrate the victim's propensity toward violence.
11
(ECF No. 39 at 12).

12      At trial, the victim testified that he had told the paramedics that he had been drinking
13
and that he had not been on any medication.  (Exh. 55; ECF No. 19-7 at 77-78).   The
14
prosecutor asked, "Now were you taking Xanax at the time when this happened on July 1st,
15
2006?"  (ECF No. 19-7 at 78).  The victim replied, "I didn't have any that day, no." (*Id.*).  The
16
prosecutor asked, "Okay.  But you had a prescription for Xanax at that time?"  (*Id.*).   The
17
victim replied, "I had an active prescription, yes."  (*Id.*).   The victim stated that he had told the
18
paramedics that he was not "on anything" but told the hospital that he had an active
19
prescription of Xanax.   (*Id.* at 84-85).  The victim reiterated that he "was not on Xanax that
20
day" because he had been "babysitting [his] kids all day."   (*Id.* at 85).  The victim explained
21
that he did not take Xanax every day but that he had "a mild case of social anxiety and at the
22
time [he] was working in the casinos, and usually [he] took it at work. [He] would take half a
23
Xanax or something at work, just to get over any anxiety that [he] might be facing while [he]
24
was there.  But any time [he] was with [his] kids, or especially if [he] was going to have some
25
drinks, [he] would never take it." (*Id.*).  The victim knew that he had not taken Xanax that day
26
because he had his kids June 30, 2006 through July 1, 2006 and had not worked that day.
27
(*Id.* at 86).  On cross-examination, the victim explained that he did not take Xanax any more
28
and that, in the past, he had only taken them at work.   (*Id.* at 105).

The Nevada Supreme Court considered and rejected this claim as follows:

> [A]ppellant claimed that appellate counsel was ineffective for failing to argue that the district court erred by denying appellant's second motion for discovery.  Specifically, appellant wanted the victim's un-redacted medical records regarding his social anxiety disorder and use of Xanax.  Appellant failed to demonstrate that appellate counsel was deficient or that he was prejudiced because he failed to demonstrate that the claim would have a reasonable probability of success on appeal.  Appellant elicited testimony at trial regarding the victim's social anxiety disorder and the fact that the victim was prescribed and took Xanax.  He failed to demonstrate what effect further information regarding these subjects would have had a trial.  Therefore, the district court did not err in denying this claim.

(Exh. 47; ECF No. 19-5 at 105).

The Court finds that Petitioner fails to demonstrate that the Nevada Supreme Court's decision was an unreasonable application of *Strickland*.  The victim testified that he had a social anxiety disorder, that he used Xanax occasionally, but that he had not used Xanax on the day of the crime.  As such, even if Plaintiff had acquired medical records about the victim's social anxiety disorder, this would not have established the victim's propensity toward violence when he used Xanax because the victim testified that he had not used Xanax that day.  As such, Plaintiff cannot establish that, had appellate counsel raised this issue on appeal, it would have had a reasonable probability of success on appeal.  Petitioner fails to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, *Strickland*, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court denies federal habeas relief as to Ground 9 in its entirety.

### ix.    Ground 10

In Ground 10, Petitioner asserts that appellate counsel was ineffective for failing to appeal the trial court's refusal to insert a cautionary jury instruction about Lanny Shearon's intoxication at the time of the events.  (ECF No. 7 at 34).  Petitioner argues that he requested a cautionary instruction prior to trial.   (*Id.* at 35).  Petitioner asserts that, had the jury been instructed about Shearon's intoxication, it would have eliminated any doubt as to whether the jury knew that they could consider Shearon's intoxication when accepting or rejecting his testimony.   (*Id.* at 36).

The trial court issued the following jury instruction with respect to witness credibility:

> The credibility or believability of a witness should be determined by his manner upon the stand, his relationship to the parties, his fears, motives, interests or feelings, his opportunity to have observed the matter to which he testified, the reasonableness of his statements and the strength or weakness of his recollections.
> If you believe that a witness has lied about any material fact in the case, you may disregard the entire testimony of that witness or any portion of his testimony which is not proved by other evidence.

(Exh. 53; ECF No. 19-5 at 153).

The Nevada Supreme Court considered and rejected this claim as follows:

> [A]ppellant claimed that appellate counsel was ineffective for failing to argue that the district court erred by denying his request for a cautionary jury instruction regarding the victim's intoxication at the time of the crime. Further, he claimed appellate counsel should have challenged the jury instruction regarding witness credibility. Appellant failed to demonstrate that counsel was deficient or that he was prejudiced because appellant failed to demonstrate that these claims had a reasonable probability of success on appeal. At the time of settling the jury instructions, appellant did not request or provide such an instruction. Further, there was another instruction that discussed witness credibility and appellant failed to demonstrate that instruction was incorrect. Therefore, the district court did not err in denying these claims.

(Exh. 47; ECF No. 19-5 at 105).

The Court finds that Petitioner fails to demonstrate that the Nevada Supreme Court's decision was an unreasonable application of *Strickland*. The Nevada Supreme Court evaluates appellate claims concerning jury instructions using a harmless error standard of review. *Barnier v. State*, 67 P.3d 320, 322 (Nev. 2003). Nevada Revised Statute § 178.598 defines "harmless error" as "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Even if appellate counsel had raised this issue on appeal, Petitioner cannot establish a reasonable probability of success on appeal because he cannot establish that the absence of this instruction affected his substantial rights. The trial court had informed the jury that it could evaluate witness credibility based on the witness's "opportunity to have observed the matter to which he testified, the reasonableness of his statements and the strength or weakness of his recollections." Thus, the jury was free to consider Shearon's intoxication level when evaluating his testimony and any error would have been harmless. Petitioner fails to meet his burden of proving that the Nevada Supreme

21

1   Court's decision was contrary to, or involved an unreasonable application of, *Strickland*, or that

2   the decision was based on an unreasonable determination of the facts in light of the evidence

3   presented in the state court proceeding. The Court denies federal habeas relief as to Ground

4   10 in its entirety.

5            x.      **Ground 11**

6            In Ground 11, Petitioner argues that appellate counsel was ineffective for failing to

7   argue on appeal that the trial judge committed prejudicial errors concerning jury instructions

8   19, 21, 25, and 28.[5]  (ECF No. 7 at 38-40).

9            The Nevada Supreme Court considered and rejected this claim:

10                    [A]ppellant claimed that appellate counsel was ineffective for failing to
     argue that the district court erred by giving jury instructions 19, 21, and 28
11   because the district court overruled too many of his objections, the State wrongly
     elicited testimony about his prior convictions, and that the district court did not
12   correctly handle a jury question after the close of evidence. [FN3] Appellant
     failed to demonstrate appellate counsel was deficient or that he was prejudiced
13   because he failed to argue that these instructions were erroneously given to the
     jury.  Therefore, the district court did not err in denying these claims . . . .
14                    [A]ppellant claimed that appellate counsel was ineffective for failing to
15   argue that the district court erred by giving jury instruction 25, the flight
     instruction.  Appellant failed to demonstrate appellate counsel was deficient or
16   that he was prejudiced.  Appellant failed to demonstrate that this claim had a
     reasonable probability of success on appeal because the State presented
17   evidence of flight and the record supports the conclusion that the defendant fled
     with consciousness of guilt and to evade arrest.  *See Rosky v. State*, 121 Nev.
18   184, 199, 111 P.3d 690, 699-700 (2005).  Therefore, the district court did not err
     in denying this claim.

19          [FN3] We note that appellant requested instruction 21 and did not object to the
20   district court giving instructions 19 and 28.

     (Exh. 47; ECF No. 19-5 at 106).

21                   **i.      Instruction 19**

22          Petitioner asserts that instruction 19 constituted plain error.  (ECF No. 7 at 38).

23   Instruction 19 stated in part that the jury "must disregard any evidence to which an objection

24   was sustained by the court and any evidence ordered stricken by the court."  (Exh. 53; ECF

25

26   _____

27          [5]  Petitioner notes that he raised the issues regarding jury instructions 3, 7, 9, and 20
     in Grounds 5, 6, 7, and 10 of the instant petition.  (ECF No. 7 at 38-39).  The Court will not
28   address jury instructions 3, 7, 9, and 20 in this subsection because the Court previously
     considered those arguments and denied relief.

No. 19-5 at 152).   Petitioner asserts that the trial judge "overruled all but one or two of [Petitioner's] objections" and deprived Petitioner of a fair trial. (Exh. 40; ECF No. 19-4 at 116).

The Court finds that Petitioner fails to demonstrate that the Nevada Supreme Court's decision with respect to instruction 19 was an unreasonable application of *Strickland*. Petitioner's argument that the trial judge overruled too many of Petitioner's objections is frivolous and, thus, Petitioner cannot demonstrate that this issue would have had a reasonable probability of success on appeal.

### ii.      Instruction 21

Petitioner argues that the prosecutor had elicited prejudicial information about Petitioner's time in prison which affected instruction 21.   (ECF No. 7 at 39).   This information prejudiced Petitioner and violated Petitioner's Fifth Amendment rights because Petitioner never took the stand. (*Id.*).

Instruction 21 stated the following: "Evidence that the defendant committed offenses other than that for which he is on trial, if believed, was not received and may not be considered by you to prove that he is a person of bad character or to prove that he has a disposition to commit crimes.   Such evidence was received and may be considered by you only for the limited purpose of determining the credibility or believability of a witness."  (Exh. 53; ECF No. 19-5 at 154).

The Court finds that Petitioner fails to demonstrate that the Nevada Supreme Court's decision with respect to instruction 21 was an unreasonable application of *Strickland.* Petitioner requested this instruction in an attempt to minimize the information elicited by the prosecutor.  The Court finds that Petitioner is unable to demonstrate that this is a non-frivolous argument that would have had a reasonable probability of success on appeal.

### iii.      Instruction 25

Petitioner contends that the trial court erroneously gave instruction 25 to the jury. (ECF No. 7 at 39).  Petitioner argues that evidence that he had left the scene did not justify issuing a flight instruction.  (*Id.*).

Instruction 25 stated the following: "The flight of a person immediately after the

1
2
3
4
5

commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in light of all other proved facts in deciding the question of his guilt or innocence.  Whether or not evidence of flight shows a consciousness of guilt and the significance to be attached to such a circumstance are matters for your deliberation."  (Exh. 53; ECF No. 19-5 at 158).

6
7
8
9
10
11
12
13
14

Under Nevada law, "a district court may properly give a flight instruction if the state presents evidence of flight and the record supports the conclusion that the defendant fled with consciousness of guilt and to evade arrest."  *Rosky v. State*, 111 P.3d 690, 699-700 (Nev. 2005).  At trial, the victim testified that Petitioner had "hit" the victim a couple of times and then made demands for the victim's wallet.  (Exh. 55; ECF No. 19-7 at 65).  When the victim retreated into his car where Petitioner could not reach him, Petitioner "took off running."  (*Id.*). The Court finds that the state did present evidence of flight and, thus, Plaintiff cannot establish that he would have had a reasonable probability of success on appeal had appellate counsel raised this issue.

15

### iv.    Instruction 28

16
17
18
19

Petitioner asserts that the trial court did not adhere to the procedures outlined in instruction 28.   (ECF No. 7 at 40).  Petitioner argues that the jury was not returned to the courts and were not able to discuss the confusion that they had with the definition of battery with substantial bodily harm.  (*Id.*).

20
21
22
23
24

Instruction 28 stated in part: "If, during your deliberation, you should desire to be further informed on any point of law or hear again portions of the testimony, you must reduce your request to writing signed by the foreperson.  The officer will then return you to court where the information sought will be given to you in the presence of, and after notice to, the district attorney and the Defendant and his/her counsel."  (Exh. 53; ECF No. 19-5 at 161).

25
26
27
28

Under Nevada law, "[t]he trial judge has wide discretion in the manner and extent he answers a jury's questions during deliberation.  If he is of the opinion the instructions already given are adequate, correctly state the law and fully advise the jury on the procedures they are to follow in their deliberation, his refusal to answer a question already answered in the

instructions is not error." *Tellis v. State*, 445 P.2d 938, 941 (Nev. 1968) (addressing former NRS § 175.395 which is currently NRS § 175.451).  Based on the above law, the Court finds that Petitioner is unable to demonstrate that he would have had a reasonable probability of success on appeal had appellate counsel raised this issue.  As such, Petitioner fails to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, *Strickland*, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The Court denies federal habeas relief as to Ground 11 in its entirety.

### xi.   Ground 12

In Ground 12, Petitioner argues that appellate counsel was ineffective for failing to argue that the trial court abused its discretion in denying Petitioner's request to subject the victim to a competency hearing due to his intoxication level at the time of the events.  (ECF No. 7 at 42-43).

The Nevada Supreme Court considered and rejected this claim:

> [A]ppellant claimed that appellate counsel was ineffective for failing to argue that the district court erred by denying his motion for a competency evaluation of the victim.  Appellant failed to demonstrate that appellate counsel was deficient or that he was prejudiced because he failed to demonstrate that this claim had a reasonable probability of success on appeal.  While the victim may have been intoxicated at the time of the altercation, every person is competent to be a witness. NRS 50.015. Further the State introduced evidence that demonstrated that the victim had personal knowledge of the incident, NRS 50.035, and the victim's inconsistent statements created issues of credibility not competency.  Therefore, the district court did not err in denying this claim.

(Exh. 47; ECF No. 19-5 at 106-07).

As an initial matter, Petitioner argues that the victim was incompetent to testify at trial because the victim had been intoxicated at the time of the crime.  Under Nevada law, "[e]very person is competent to be a witness except as otherwise provided in this title." Nev. Rev. Stat. § 50.015.  In Nevada, a witness who is intoxicated *at trial* may testify as long as he or she is "capable of comprehending questions and responding in a lucid manner." *Mirin v. State*, 560 P.2d 145, 145 (Nev. 1977).

In this case, the Court finds that Petitioner fails to demonstrate that the Nevada

1   Supreme Court's decision was an unreasonable application of *Strickland*. Petitioner cannot

2   establish that he would have had a reasonable probability of success on this issue because

3   there is nothing in the state court record to establish that the victim was unable to comprehend

4   questions and respond to questions in a lucid manner.   The question of Petitioner's

5   intoxication during the time of the crime speaks the credibility of his trial testimony but not to

6   his competency.  Accordingly, Petitioner fails to meet his burden of proving that the Nevada

7   Supreme Court's decision was contrary to, or involved an unreasonable application of,

8   *Strickland*, or that the decision was based on an unreasonable determination of the facts in

9   light of the evidence presented in the state court proceeding. The Court denies federal habeas

10  relief as to Ground 12 in its entirety.

11                        **xii.    Grounds 13 and 14**

12          In Ground 13, Petitioner argues that appellate counsel was ineffective for failing to

13  federalize the direct appeal claim about the admission of Petitioner's recorded telephone

14  conversations.  (ECF No. 7 at 46).  Petitioner asserts that had appellate counsel federalized

15  that issue, it would be exhausted. (*Id.* at 48).  In Ground 14, Petitioner argues that appellate

16  counsel was ineffective for failing to federalize his claims regarding the testimony of a witness

17  who had contacted Petitioner in prison and the prosecutor's actions of eliciting testimony

18  regarding Petitioner's prior prison time.   (*Id.* at 50).

19          The Nevada Supreme Court considered and rejected that claim:

20              [A]ppellant claimed that appellate counsel was ineffective for failing to
        federalize the claims that were raised on direct appeal.  Appellant failed to
21      demonstrate that appellate counsel was deficient or that he was prejudiced.
        Appellant failed to demonstrate that he would have gained a more favorable
22      standard of review on direct appeal had appellate counsel federalized the
        arguments. *See Browning v. State*, 120 Nev. 347, 365, 91 P.3d 39, 52 (2004).
23      Therefore, the district court did not err in denying this claim.

24  (Exh. 47; ECF No. 19-5 at 107).

25          The Court finds that Petitioner fails to demonstrate that the Nevada Supreme Court's

26  decision was an unreasonable application of *Strickland*.  Petitioner has not established that

27  had appellate counsel federalized these claims on appeal that Petitioner would have had a

28  reasonable probability of success on those issues on direct appeal.  As such, Petitioner fails

1   to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or

2   involved an unreasonable application of, *Strickland*, or that the decision was based on an

3   unreasonable determination of the facts in light of the evidence presented in the state court

4   proceeding. The Court denies federal habeas relief as to Grounds 13 and 14 in their entirety.

5                 **xiii.   Ground 15**

6       In Ground 15, Petitioner asserts that appellate counsel was ineffective for failing to

7   appeal the denial of Petitioner's motion to dismiss the third amended information against him.

8   (ECF No. 7 at 54).  The district court "heard and denied [the motion] without discussion." (*Id.*).

9   Petitioner asserts that he has the right to be heard on his motions and that, had appellate

10   counsel raised this issue, the Nevada Supreme Court would have remanded this matter back

11   to district court in order for Petitioner to be "heard" on the motion to dismiss.   (*Id.* at 55).

12       On March 19, 2009, the district court addressed several of Petitioner's motions before

13   sentencing. (Exh. 58; ECF No. 36-1 at 3).  With respect to the motion to dismiss, the transcript

14   demonstrates the following:

15       [Petitioner]:  A motion to dismiss the –
           [Prosecutor]: Because I didn't sign the – the DA didn't sign the –
16       [Court]: Oh because – oh yeah, you wanted something dismissed because it
           wasn't signed.
17       [Prosecutor]: The third amended information.
           [Court]: The third amended information.  That's ridiculous, that's denied.  Okay
18       let's do sentencing.
           [Petitioner] Well can I argue it or should I –
19       [Court]: No, there's nothing ot argue.  We're – that's – there's nothing to argue
           on that Mr. Williams, [don']t even try.  So now we're going to do sentencing.
20   (ECF No. 36-1 at 5).

21       The Nevada Supreme Court considered and rejected this claim as follows:

22        [A]ppellant claimed that appellate counsel was ineffective for failing to
23       argue that the district court erred by denying appellant's motion to dismiss the
         third amended information.  Specifically, appellant claims that because a deputy
24       district attorney signed the information rather than the district attorney, the third
         amended information was void.  Appellant failed to demonstrate that appellate
25       counsel was deficient or that he was prejudiced as he failed to demonstrate that
         this claim had a reasonable probability of success on appeal.  It was not error
26       for the deputy district attorney to sign the information because the district
         attorney may delegate any and all duties other than policymaking to his or her
27       deputies.  *See* NRS 252.070(1).  Therefore, the district court did not err in
         denying this claim.

28

(Exh. 47; ECF No. 19-5 at 107).

The Court finds that Petitioner fails to demonstrate that the Nevada Supreme Court's decision was an unreasonable application of *Strickland*.  Under Nevada law, deputy district attorneys are "authorized to transact all official business relating to those duties of the office . . . to the same extent as [the district attorney] and perform such other duties as the district attorney may from time to time direct" except for policymaking authority.  Nev. Rev. Stat. § 252.070(1).  As such, Petitioner cannot establish that he would have had a reasonable probability of success on appeal on this issue because the law permits the deputy district attorney to sign charging documents.  Accordingly, Petitioner fails to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, *Strickland*, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court denies federal habeas relief as to Ground 15 in its entirety.

### xiv.   Ground 16

In Ground 16, Petitioner argues that appellate counsel was ineffective for failing to address Petitioner's motion to preclude being sentenced as a habitual criminal.  (ECF No. 7 at 57).  Petitioner asserts that he was prejudiced when his case transferred from Judge Herndon to Judge Glass and that Judge Glass's ruling did not address whether Petitioner's *Faretta* canvass was valid due to the fact that the canvass did not inform Petitioner about the range of punishment that he could receive.  (*Id.* at 57, 59).

On July 26, 2007, Judge Herndon held a *Faretta* canvass.  (Exh. 18; ECF No. 19-2 at 39).  During the canvass, Petitioner explicitly stated, "Now, I'm being prosecuted as a habitual criminal, and based on that substantial bodily harm could trigger if I get convicted for it, getting punished as a habitual criminal carrying a lengthy prison sentence."  (ECF No. 19-2 at 44). With respect to his sentence, Petitioner stated, "1 to 10 – in this case I'm charged a habitual criminal.  I'm looking at life, so that's what I'm looking at."  (*Id.* at 45).

The Nevada Supreme Court considered and rejected this claim as follows:

[A]ppellant claimed that appellate counsel was ineffective for failing to

28

1
2
3
4
5
6
7

argue that he should not have been sentenced as a habitual criminal. Appellant claimed that appellate counsel should have argued that the *Faretta* canvass was inadequate because he was not informed that the sentences could be run consecutive and because, five days prior to trial, he wanted standby counsel to take over and handle the trial. *Faretta v. California*, 422 U.S. 806 (1975). Appellant failed to demonstrate that appellate counsel was deficient or that he was prejudiced because he failed to demonstrate that this claim had a reasonable probability of success on appeal. Neither of these arguments go to whether it was proper for the district court to sentence appellant as a habitual criminal. Appellant was given proper notice of the habitual criminal enhancement, was canvassed regarding the habitual criminal enhancement during the *Faretta* canvass, and had the requisite prior convictions. Therefore, the district court did not err in denying this claim.

8

(Exh. 47; ECF No. 19-5 at 107-08).

9
10
11
12
13
14
15
16
17

The Court finds that Petitioner fails to demonstrate that the Nevada Supreme Court's decision was an unreasonable application of *Strickland*. Petitioner cannot demonstrate that he would have had a reasonable probability of success on this issue on appeal because Petitioner clearly knew that he was being prosecuted as a habitual criminal and that he faced life imprisonment. Accordingly, Petitioner fails to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, *Strickland*, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court denies federal habeas relief as to Ground 16 in its entirety.

18

**xv.    Ground 17**

19
20
21
22

In Ground 17, Petitioner argues that appellate counsel was ineffective for failing to appeal the legality of Petitioner's habitual criminal sentence. (ECF No. 7 at 61). Petitioner argues that the documents used to demonstrate his California prior convictions were minutes rather than judgment of convictions.   (*Id.* at 62-63).

23

The Nevada Supreme Court considered and rejected this claim:

24
25
26
27
28

[A]ppellant claimed that appellate counsel was ineffective for failing to argue that his sentence was illegal. Appellant failed to demonstrate that appellate counsel was deficient or that he was prejudiced because he failed to demonstrate that his sentence was illegal. Appellant previously filed a motion to correct an illegal sentence raising the same issues and this court concluded that he failed to demonstrate that his sentence was illegal. *Williams v. State*, Docket No. 59821 (Order of Affirmance, February 12, 2013). Therefore this claim is barred by doctrine of law of the case, *Hall v. State*, 91 Nev. 314, 315-16, 535 P.2d 797, 798-99 (1975), and the district court did not err in denying this

claim.

(Exh. 47; ECF No. 19-5 at 108).

In its previous order of affirmance, the Nevada Supreme Court stated, "In his motion, filed on June 14, 2011, appellant claimed that the court lacked jurisdiction because the State did not provide the district court with certified copies of his prior convictions, his presentence report (PSI) was not signed, he was unable to cross-examine the person who wrote the PSI, and the notice of intent to seek the habitual criminal enhancement was not signed by the State. Appellant failed to demonstrate that his sentence was facially illegal or that the district court lacked jurisdiction." (Exh. 51; ECF No. 19-5 at 127).

The Court finds that Petitioner fails to demonstrate that the Nevada Supreme Court's decision was an unreasonable application of *Strickland*. Petitioner cannot establish that he would have had a reasonable probability of success on this issue on appeal because Petitioner had previously raised this issue to the Nevada Supreme Court and they rejected the argument. Accordingly, Petitioner fails to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, *Strickland*, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court denies federal habeas relief as to Ground 17 in its entirety.

**B.    Due Process**

**i.    Ground 18**

In Ground 18, Petitioner argues that his due process rights were violated because the trial court admitted recordings of Petitioner's jailhouse telephone conversations into evidence. (ECF No. 1-1 at 65). In his counseled direct appeal brief, Petitioner argued that the recordings of six of his jailhouse telephone conversations lacked proper authentication and were more prejudicial than probative. (Exh. 36; ECF No. 19-4 at 36). Petitioner argued that the telephone recordings contained highly offensive subject matter unrelated to the charged crimes including frank discussions of sex, the liberal use of crude language, and infidelity to the woman he was speaking with. (ECF No. 19-4 at 37). Petitioner argued that he had made numerous

statements which were not probative of guilt but could be easily misinterpreted including hope that the victim did not appear in court, feeling sick from this "rough situation," the best outcome would be to beat the charges, the use of obscenities when referring to the police, and the use of an obscenity when referring to the victim's condition.   (*Id.* at 39).  Petitioner argued that the lack of authentication violated state law.   (*Id.* at 40-42).  Petitioner asserts that the trial court failed to enter a limiting instruction under state and federal law.  (*Id.* at 43-44).

At trial, the court referenced Petitioner's objections and stated, "Okay, and I know, Mr. Williams, you object, and I've – I've ruled that your objection's overruled. And you can go ahead and play [the recordings]."  (Exh. 56; ECF No. 19-8 at 95).[6]

On direct appeal, the Nevada Supreme Court summarily denied this issue in a footnote:

> Williams also argues that: (1) the district court abused its discretion by admitting recordings of his telephone conversations from jail . . . [and] deprived him of the right to a fail trial and due process under the Fifth and Fourteenth amendments of the United States Constitution.  After considering these issues, we conclude that they are also without merit.

(Exh. 37; ECF No. 19-4 at 64 n.2).

Federal habeas relief does not lie for errors of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  Instead, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Id.* at 68.   The trial court's "failure to comply with the state's rules of evidence is neither a necessary nor a sufficient basis for granting habeas relief.  While adherence to state evidentiary rules suggests that the trial was conducted in a procedurally fair manner, it is certainly possible to have a fair trial even when state standards are violated; conversely, state procedural and evidentiary rules may countenance processes that do not comport with fundamental fairness."  *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991).  Evidence introduced by the prosecution will often raise more than one inference, some permissible, some not.  *Id.* at 920.  The court must rely on the jury to sort evidence out in light of the court's instructions.   *Id.*  The admission of

---

[6]  Petitioner's direct appeal brief appears to reference a longer pre-trial discussion between the trial court, the prosecutor, and Petitioner regarding the telephone conversations. (Exh. 36; ECF No. 19-4 at 36-37).  The Court has not been provided documentation of these discussions.

1
2
3

evidence can violate due process "[o]nly if there are no permissible inferences the jury may draw from the evidence" or if the evidence is of a quality that "necessarily prevents a fair trial." *Id.*

4
5
6
7
8
9
10
11
12
13
14

In this case, the Court finds that the admission of the telephone conversations based on the lack of authentication violates state law rather than Petitioner's constitutional rights. Petitioner's direct appeal brief asserts violations of state law which are not a basis for habeas relief. With respect to the prejudicial nature of the telephone calls, the Court finds that Petitioner is barred from complaining about the absence of a limiting instruction because he failed to request a limiting instruction at trial.[7]  *See Jammal*, 926 F.2d at 920 n.2. Accordingly, Petitioner fails to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court denies federal habeas relief as to Ground 18 in its entirety.

15

       **ii.**       **Ground 19**

16
17
18
19
20
21
22
23

In Ground 19, Petitioner asserts that his due process rights were violated because the trial court permitted a witness to testify about his contact with Petitioner in prison. (ECF No. 7 at 67). In his counseled direct appeal brief, Petitioner argued that the trial court had erred by allowing Adolfo Heute-Rios to testify on cross-examination that he had met Petitioner at Indian Springs, a state prison, in 1999. (Exh. 36; ECF No. 19-4 at 44). The district court had permitted the testimony based on *Lobato v. State*, 96 P.3d 765 (Nev. 2004). (ECF No. 19-4 at 45-46). The district court erred because it did not consider whether bias existed from the fact that Petitioner and Huete-Rios had been in prison at the same time. (*Id.* at 47). The

24

25
26
27
28

       [7]  Petitioner's direct appeal brief argues that, under state law, the state had a duty to request that the jury be instructed on the limited use of prior bad act evidence and that the trial court should have *sua sponte* issued one. (Exh. 36; ECF No. 19-4 at 43). Moreover, Petitioner's direct appeal cites to Nevada law which states that "the failure to give a limiting instruction on the use of uncharged bad act evidence is a nonconstitutional error." (*Id.* (citing to *Tavares v. State*, 30 P.3d 1128, 1132 (Nev. 2001) *holding modified by Mclellan v. State*, 182 P.3d 106 (Nev. 2008)).

limiting instruction only admonished the jury to consider the evidence with respect to Huete-Rios's credibility.   (*Id.* at 49).

Adolfo Huete-Rios testified on behalf of the defense.  (Exh. 56; ECF No. 19-8 at 175-76).  Huete-Rios testified that the victim had yelled for his keys and had "struck [Petitioner] first."  (ECF No. 19-8 at 181).  On cross-examination, the following exchange took place:

> [Prosecutor]: Okay.  Well, let me ask you this.  Did you know [Petitioner] before this incident?
> [Huete-Rios]: I met him briefly at Indian Springs in '99.  Briefly.  I didn't know –
> [Court]: Okay, stop.
> [Huete-Rios]:  – him.
> [Court]: Stop, stop.
> [Huete-Rios]: – but briefly.
> [Court]: Stop.
> [Petitioner]: Your Honor, I'd like to –
> [Court]: No.  You stop.  Take the jury out.
> [Jury Admonished]
> [Jury Out]
> . . .
> [Prosecutor]: They're – they're objecting. I don't know what –as to what but –
> [Court] : That they met at Indian Springs.
> [Prosecutor]: You know what, it's their witness, Your Honor, and how they know each other – that they knew each other before and he's seen him since which means they were probably in custody together, it's all relevant.  It goes to this witness's motive for testifying today, his bias, and the fact that he might even take the stand and lie for this gentleman that he served time with.  This gentleman, you can tell he's nervous.  He knows what happens to somebody who testifies against somebody, so you know he's going to testify for his buddy . . . Clearly under [Lobato] legit . . .
> [Petitioner]: First of all, there's no indication when we were in custody together. As far as him saying Indian Springs, I haven't been at Indian Springs since 1999.

(*Id.* at 222-24).  Petitioner requested a mistrial on grounds of prejudice based on the fact that the jury had heard that he had been in prison.   (*Id.* at 225).  The court took a break to read *Lobato* and stated, "it says, the extrinsic evidence was admissible because it was relevant to the inmate's motivation to give false testimony."   (*Id.* at 228-29).

After the jury returned, the following cross-examination took place:

> [Prosecutor]: Sir, so you have known [Petitioner] for approximately ten years, correct?
> [Huete-Rio]: Known of him.  I mean I didn't know his name, no, in '99, just he helped me out where he was working in the law library or the regular library and that's –
> [Prosecutor]: Okay.  So –
> [Huete-Rios]:  – it.
> [Prosecutor]: So you knew him when you were in prison back in 1999, correct?
> [Huete-Rios]: Excuse me?

1
2
3
4

[Prosecutor]: You knew [Petitioner] when you were in prison back in 1999, correct?
[Huete-Rios]: Just ran into him, yeah. You could say that . . .
[Prosecutor]: So the answer is yes, you knew [Petitioner] back in 1999 when you were in prison?
[Huete-Rios]: I knew of him. I didn't know his name, ma'am. Because he helped me wherever he was working. That's it.

5

(*Id.* at 241-42).

6
7
8
9
10
11

The court included jury instruction #21 in light of Huete-Rios's testimony which stated: "Evidence that the defendant committed offenses other than that for which he is on trial, if believed, was not received and may not be considered by you to prove that he is a person of bad character or to prove that he has a disposition to commit crimes. Such evidence was received and may be considered by you only for the limited purpose of determining the credibility or believability of a witness." (Exh. 53; ECF No. 19-5 at 154).

12

On direct appeal, the Nevada Supreme Court summarily denied this issue in a footnote:

13
14
15

Williams also argues that: . . . (2) the district court committed error by allowing a witness to testify regarding the witness's contact with Williams in prison. . . [and] deprived him of the right to a fail trial and due process under the Fifth and Fourteenth amendments of the United States Constitution. After considering these issues, we conclude that they are also without merit.

16

(Exh. 37; ECF No. 19-4 at 64 n.2).

17
18
19
20

The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process. *Estelle v. McGuire*, 502 U.S. at 67-69. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 68.

21
22
23
24
25
26

In this case, the Court finds that the testimony that Huete-Rios met Petitioner in prison is at most a state law error that does not rise to a constitutional violation. Even if the trial court applied the holding in *Lobato*[8] incorrectly, Petitioner cannot establish that the testimony that he and Huete-Rios had met in prison rendered the trial fundamentally unfair in light of the victim's testimony, multiple police officers' testimonies, and a limiting jury instruction. Accordingly, Petitioner fails to meet his burden of proving that the Nevada Supreme Court's

27

28

---

[8]   The *Lobato* case discusses impeachment by use of extrinsic evidence, NRS § 50.085(3), and NRS § 178.598. 96 P.3d at 770-72.

1   decision was contrary to, or involved an unreasonable application of, clearly established

2   federal law, or that the decision was based on an unreasonable determination of the facts in

3   light of the evidence presented in the state court proceeding. The Court denies federal habeas

4   relief as to Ground 19 in its entirety.

5           iii.    **Ground 20**

6           In Ground 20, Petitioner argues that the prosecutor engaged in prosecutorial

7   misconduct when she repeatedly made comments about Petitioner's post-*Miranda* silence to

8   the jury. (ECF No. 7 at 69). Petitioner asserts that this conduct violated his due process

9   rights. (*Id.*). In his counseled direct appeal brief, Petitioner argued that the prosecutor had

10  alluded to Petitioner's post-*Miranda* silence by asking Detective Franc whether Petitioner had

11  said anything about self-defense or being attacked by the victim. (Exh. 36; ECF No. 19-4 at

12  50). During closing arguments, the prosecutor commented multiple times that Petitioner had

13  not said anything about self-defense during his jailhouse phone calls. (ECF No. 19-4 at 51).

14  Petitioner argued that it was a due process violation to comment on his post-arrest, post-

15  *Miranda* silence. (*Id.* at 51-52).

16          According to the trial transcript, Detective Franc was the officer that had listened to the

17  recorded, outgoing phone calls that Petitioner made after his arrest from the Clark County

18  Detention Center. (Exh. 56; ECF No. 19-8 at 73-74, 89). The prosecutor asked Franc, "Now,

19  in all of these – these 60 calls that you listened to, anywhere on any of these calls did you ever

20  hear [Petitioner] talk about that he was attacked by the victim?" (ECF No. 19-8 at 93). Franc

21  responded, "No." (*Id.*). Petitioner objected and the trial court overruled the objection. (*Id.* at

22  93-94). The prosecutor asked Franc, "Did you ever hear him talk about how he was acting in

23  self-defense?" (*Id.* at 94). Franc responded, "Never." (*Id.*).

24          The Nevada Supreme Court rejected this argument on direct appeal:

25              First, the State did not comment on [Petitioner's] silence after being
            advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). In
26          *Gaxiola v. State*, 121 Nev. 638, 655, 119 P.3d 1225, 1237 (2005), we held that
            "'the prosecution is forbidden at trial to comment upon an accused's election to
27          remain silent following his arrest and after he has been advised of his rights.'"
            (quoting *McGee v. State*, 102 Nev. 458, 461, 725 P2d 1215, 1217 (1986)).
28          However, questioning only rises to the level of commentary when the

                                          35

1
2
3
4
5

prosecution engages in acts such as, but not limited to, cross-examining a defendant as to why he was silent after being read his *Miranda* rights or using his post-*Miranda* silence for impeachment purposes. *Id.* (discussing *Doyle v. Ohio*, 426 U.S. 610 (1976)). At trial, the State did not comment on [Petitioner's] invocation of his right to remain silent when it argued that [Petitioner] had fabricated his claim of self-defense. As evidence of that fabrication, the State pointed to [Petitioner's] jail telephone calls in which he never claimed he was acting self-defense. [Petitioner's] telephone calls were not subject to *Miranda*, [Petitioner] was not subject to custodial interrogation, and the State did not improperly comment on [Petitioner's] post-*Miranda* silence.

6

(Exh. 37; ECF No. 19-4 at 64-65).

7
8
9
10
11

In *Doyle v. Ohio*, 426 U.S. 610 (1976), the United States Supreme Court held that "the use for impeachment purposes of petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth Amendment." *Id.* at 619. The Supreme Court held that "[s]ilence in the wake of these [*Miranda*] warnings may be nothing more than the arrestee's exercise of these *Miranda* rights." *Id.* at 617.

12
13
14
15
16
17
18
19
20
21

The Court finds that Petitioner fails to demonstrate that the Nevada Supreme Court's decision was an unreasonable application of federal law. The Nevada Supreme Court correctly found that Petitioner's telephone calls were not subject to *Miranda* because he was speaking to his own personal acquaintance on the phone and not to law enforcement authorities. As such, the prosecutor did not violate Petitioner's due process rights by commenting on Petitioner's jailhouse phone calls. Accordingly, Petitioner fails to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court denies federal habeas relief as to Ground 20 in its entirety.

22

### iv.    Ground 21

23
24
25
26
27

In Ground 21, Petitioner argues that his due process rights were violated because the district court "committed error by failing to adhere to mandatory procedural safeguards for juror questions." (ECF No. 7 at 71). In his counseled direct appeal brief, Petitioner asserted that the trial court had permitted jurors to ask the witnesses a number of questions but routinely determined the admissibility of those questions in an unrecorded, bench conference held

28

within the jury's presence.  (Exh. 36; ECF No. 19-4 at 53).  The trial court acknowledged that there were no microphone recordings of the bench conferences but noted that, except for two questions, there were no objections raised by either party.  (ECF No. 19-4 at 53).  The trial court stated that it did not ask Huete-Rios the two questions about what was Petitioner in jail for in 1999 and where did Huete-Rios see and talk with Petitioner in 2007.  (*Id.*). The Court also did not ask the question of whether Petitioner had mentioned defending himself when he was taken in custody.  (*Id.*).  Petitioner argued that the trial court had violated *Knipes v. State*, 192 P.3d 1178 (Nev. 2008) and *Flores v. State*, 965 P.2d 901 (Nev. 1998).  (*Id.*).

The Nevada Supreme Court rejected this argument on direct appeal:

> Second, while the district court abused its discretion by failing to conduct hearings to determine the admissibility of the juror questions on the record pursuant to *Knipes v. State*, 124 Nev. __, 192 P.3d 1178 (2008), and by failing to instruct the jurors on the record pursuant to *Flores v. State*, 114 Nev. 910, 965 P.2d 901 (1998), we conclude that this error was harmless.
>
> During the trial, the district court permitted jurors to ask questions of witnesses but discussed the admissibility of the questions with counsel during unrecorded bench conferences.  Hearings to determine the admissibility of juror questions must be conducted on the record.  *Knipes*, 124 Nev. at __, 192 P.3d at 1182.  Failure to maintain such a record is an abuse of discretion, subject to nonconstitutional harmless error review under NRS 178.598.  *Knipes*, 124 Nev. at __, 192 P.3d at 1183-84.  Under this nonconstitutional error analysis, the test is whether the error "'"had substantial and injurious effect or influence in determining the jury's verdict."'"  *Id.* at __, 192 P.3d at 1183 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  The district court abused its discretion in failing to conduct the hearings to determine admissibility of the juror questions on the record.  However, we conclude that the error was harmless; it did not have a substantial and injurious effect or influence in determining the jury's verdict.
>
> The record reflects that the district court judge did give the jury some instructions at the start of trial, which she referred to as her "opening spiel."  However, these instructions were not transcribed, so it is not clear whether the district court instructed the jury pursuant to *Flores*.  Jurors must be instructed that their questions must be factual in nature and designed to clarify information already presented, that only questions permitted under the rules of evidence may be asked, and that they must not place undue weight on the response to their questions.  *Flores*, 114 Nev. at 913, 965 P.2d at 902-03.  However, Williams was able to examine the juror questions; when he objected, the questions were not asked of the witness. [FN3] None of the juror questions that the district court did ask of the witnesses violated the *Flores* instructions, nor was there evidence that the jury gave undue weight to their own questions.  We conclude that, under these circumstances, the district court's failure to comply with the *Flores* mandate constitutes harmless error.
>
> [FN3]: Here there was one juror question that was not asked, and was instead placed on the record, but the record is silent as to why the question was not asked or if Williams objected to it.  However, we conclude that the district court

37

1   was correct in refusing to ask this question of the witness.

2   (Exh. 37; ECF No. 19-4 at 65-66).

3       In *Knipes v. State*, 192 P.3d 1178 (Nev. 2008), the Nevada Supreme Court concluded

4   that hearings regarding the admissibility of juror questions, if there has been an objection,

5   must be conducted on the record as part of the procedural safeguards prescribed in *Flores v.*

6   *State*, 965 P.2d 901 (Nev. 1998). *Id.* at 1185. The "failure to properly administer these

7   safeguards is subject to harmless-error review under the standard for nonconstitutional trial

8   error." *Id.* The Nevada Supreme Court applies the federal harmless-error test announced in

9   *Kotteakos v. United States*, 328 U.S. 750 (1946) and reviews nonconstitutional trial error for

10  harmlessness based on whether it "had substantial and injurious effect or influence in

11  determining the jury's verdict." *Id.* at 1183.

12      In *Knipes*, the Nevada Supreme Court held that the district court had abused its

13  discretion by failing to record bench conferences regarding the admissibility of juror questions.

14  *Id.* at 1182. The district court had also abused its discretion by failing to give the parties an

15  opportunity to object to the juror question by failing to hold any bench conference. *Id.*

16  Nonetheless, the Nevada Supreme Court held that the mishandling of the juror questions were

17  harmless because the district court had substantially complied with *Flores'* procedural

18  safeguards. *Id.* at 1184-85. The Nevada Supreme Court reasoned that the district court had

19  routinely held muted bench conferences with the apparent intent of precluding jurors from

20  taking offense to having their questions vetted in an adversarial manner. *Id.* at 1184.

21  Additionally, with respect to the questions the district court failed to hold a bench conference

22  on, none of those questions generated an inference of guilt. *Id.* at 1185.

23      In this case, Petitioner fails to meet his burden of proving that the Nevada Supreme

24  Court's decision was contrary to, or involved an unreasonable application of, clearly

25  established federal law, or that the decision was based on an unreasonable determination of

26  the facts in light of the evidence presented in the state court proceeding. Based on the record,

27  the trial court did not ask any juror questions that had been objected to by either party. Thus,

28  any mishandling of the juror questions did not have a substantial and injurious effect or

1   influence in determining the jury's verdict.  Accordingly, the Court denies federal habeas relief

2   as to Ground 21 in its entirety.

3                    **v.      Ground 23**

4        In Ground 23, Petitioner argues that his due process rights were violated based on an

5   accumulation of error which deprived Petitioner of the right to a fair trial.  (ECF No. 7 at 75).

6   In his counseled direct appeal brief, Petitioner argued that "[e]ven if the previous errors noted

7   above [were] considered harmless in isolation, the cumulative effect of these errors had a

8   prejudicial effect on the jury when viewed in context of the whole trial and [seriously] affected

9   the integrity of the proceedings which require[d] reversal."  (Exh. 36; ECF No. 19-4 at 57-58).

10       On direct appeal, the Nevada Supreme Court summarily denied this issue in a footnote:

11            Williams also argues that: . . . (5) an accumulation of error deprived him
             of the right to a fail trial and due process under the Fifth and Fourteenth
12           amendments of the United States Constitution.  After considering these issues,
             we conclude that they are also without merit.
13  (Exh. 37; ECF No. 19-4 at 64 n.2).

14       "The combined effect of multiple errors may justify habeas relief 'if it renders a trial

15  fundamentally unfair, even where each error considered individually would not require

16  reversal.'"  *Fairbank v. Ayers*, 650 F.3d 1243, 1257 (9th Cir. 2011).  However, where none of

17  the claims rise to the level of constitutional error, "there is nothing to accumulate to a level of

18  a constitutional violation."  *Id.*

19       In this case, none of the claims rise to the level of constitutional error and, thus, there

20  is no cumulative constitutional error.  Petitioner fails to meet his burden of proving that the

21  Nevada Supreme Court's decision was contrary to, or involved an unreasonable application

22  of, clearly established federal law, or that the decision was based on an unreasonable

23  determination of the facts in light of the evidence presented in the state court proceeding.

24  Accordingly, the Court denies federal habeas relief as to Ground 23 in its entirety.

25                   **vi.     Ground 24**

26       In Ground 24, Petitioner argues that his due process rights were violated when the

27  district court sentenced him illegally as a habitual criminal.  (ECF No. 7 at 77).  Specifically,

28

Petitioner asserts that the district court lacked jurisdiction to sentence him because he had never been served with proof of his priors and the district court mistakenly accepted the California documents as judgment of convictions. (*Id.*). Petitioner argues that the judgment of convictions are facially infirm because they do not show him being sentenced on the primary offenses. (*Id.* at 79).

On March 19, 2009, the district court held a hearing on Petitioner's *pro per* "motion from being sentenced as a habitual criminal." (Exh. 58; ECF No. 36-1 at 2). At the hearing, Petitioner objected to "the prior convictions being used out of California." (ECF No. 36-1 at 14). The following exchanged occurred:

> [Petitioner]: I believe what [the prosecutor's] using in the California conviction is an abstract of judgment or a judgment of conviction. I would like her to stipulate to that whether these are –
> [Court]: No by law she files the judgments of conviction certified copies, and that's what she's done, Mr. Williams.
> . . .
> [Petitioner]: The written judgment of conviction is required contents are set for by statute NRS 176.105 paragraph 1, and I relied upon by other courts long after the proceedings before the District Court had passed.
> [Court]: Mr. Williams, she has filed certified copies of the judgments of convictions consistent with the law. What else do you have to talk to me about?
> [Petitioner]: I'm saying it's not consistent with the law Your Honor because the District Court Judge's signature on the document is required to ensure that it does so. That this was accurate information being offered and that's according to NRS 176.105 paragraph 3, and this is quoted in *Ledbetter v. State* cited as 129 P.3d 671, 680, and that's a Nevada 2006 case.
> . . .
> [Petitioner]: None of these abstracts of judgments show a signature by the Judge verifying that they were accurate.
> . . .
> [Court]: First of all the State has, by law, provided me with one, two, three, four, five, six, seven certified copies of judgments of conviction, of felony convictions that are–and they wouldn't be certified by the courts of record unless they were true and accurate copies of the judgments of convictions from those cases . . . They're all valid.

(*Id.* at 15-16,18).

Petitioner filed a motion for correction of illegal sentence with the district court. (Exh. 49; ECF No. 19-5 at 115). Petitioner argued that the district court had erroneously accepted the California documents as certified copies of the judgment. (ECF No. 19-5 at 116). Petitioner contended that the documents were clearly criminal court minutes which were not judgment of convictions. (*Id.* at 117). Petitioner asserted that the documents were at

40

variance to what Nevada accepted as proof of priors.   (*Id.*).

The district court held a hearing on the motion for correction of illegal sentence and denied the motion without Petitioner's presence at the hearing.  (Exh. 50; ECF No. 19-5 at 124-25). On appeal, the Nevada Supreme Court affirmed the district court's order and held the following:

> In his motion, filed, June 14, 2011, appellant claimed that the court lacked jurisdiction because the State did not provide the district court with certified copies of his prior convictions, his presentence report (PSI) was not signed, he was unable to cross-examine the person who wrote the PSI, and the notice of intent to seek habitual criminal enhancement was not signed by the State. Appellant failed to demonstrate that his sentence was facially illegal or that the district court lacked jurisdiction.  *See Edwards v. State*, 112 Nev. 704, 708, 918 P.2d 321, 324 (1996).  We therefore conclude that the district court did not err in denying appellant's motion.  Accordingly, we ORDER the judgment of the district court AFFIRMED.

(Exh. 51; ECF No. 19-5 at 127-128).

In this case, the district court sentenced Petitioner as a large habitual criminal under NRS § 207.010(1)(b).  That statute required the prosecutor to establish that Petitioner previously had been convicted of three felonies.  The prosecutor used two prior felony convictions from Nevada and several prior felony convictions from California to establish Petitioner's status as a large habitual criminal.  (Exh. 59; ECF No. 36-2 at 3-78).  Petitioner asserts that the California documents were inadequate to demonstrate his prior felony convictions because the California documents did not comply with Nevada's statutory requirements for judgments of conviction.  (*See* ECF No. 36-2 at 9-10, 12, 21, 27, 42).

The Court finds that Petitioner fails to demonstrate that the Nevada Supreme Court's decision was an unreasonable application of federal law.  Petitioner seeks to have this Court determine whether the state court erred in permitting the California documents to qualify as judgments of conviction under Nevada law.  However, federal habeas corpus relief does not lie for errors of state law.  *Estelle*, 502 U.S. at 67.  Petitioner may not transform a state-law issue into a federal one merely by asserting a violation of due process.  *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).  Petitioner fails to meet his burden of proving that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application

1  of, clearly established federal law, or that the decision was based on an unreasonable

2  determination of the facts in light of the evidence presented in the state court proceeding.

3  Accordingly, the Court denies federal habeas relief as to Ground 24 in its entirety.

4  **IV.   CERTIFICATE OF APPEALABILITY**

5       In order to proceed with an appeal, Petitioner must receive a certificate of appealability.

6  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946,

7  950-951 (9th Cir. 2006).  District courts are required to rule on the certificate of appealability

8  in the order disposing of a proceeding adversely to the petitioner or movant, rather than

9  waiting for a notice of appeal and request for certificate of appealability to be filed.  Rule 11(a)

10  of the Rules Governing Section 2254 Cases.  Generally, a petitioner must make "a substantial

11  showing of the denial of a constitutional right" to warrant a certificate of appealability.  28

12  U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  With respect to claims

13  rejected on the merits, a "petitioner must demonstrate that reasonable jurists would find the

14  district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S.

15  at 484.  With respect to denials based on procedural grounds, a COA should issue when (1)

16  "the prisoner shows, at least, that jurists of reason would find it debatable whether the petition

17  states a valid claim of the denial of a constitutional right" and (2) "that jurists of reason would

18  find it debatable whether the district court was correct in its procedural ruling." *Id.*

19       After reviewing its determinations and rulings in adjudicating the instant petition, the

20  Court finds that none of its rulings meet the *Slack* standard.  The Court therefore declines to

21  issue a certificate of appealability.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

V.     **CONCLUSION**

For the foregoing reasons, IT IS ORDERED that the petition for a writ of habeas corpus (ECF No. 7) is denied in its entirety with prejudice.

IT IS FURTHER ORDERED that the certificate of appealability is DENIED.

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment accordingly and close this case.


DATED: This 29th day of June, 2016.


_____
United States District Judge

43